Ethan Jacobs (SBN 291838)
ethan@ejacobslaw.com
ETHAN JACOBS LAW
100 Pine Street, Suite 1250
San Francisco, California 94111
Tel.: (415) 275-0845

James Slater (admitted *pro hac vice*)
james@slater.legal
SLATER LEGAL PLLC
333 S.E. 2nd Avenue #2000
Miami, Florida 33131
Tel.: (305) 523-9023

*Attorneys for Plaintiff/
Counter-Defendant
Pablo Marquez*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PABLO MARQUEZ, p/k/a PABLO STANLEY,<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>WILLIAM MOYNIHAN,<br><br>Defendant/Counter-Claimant. | Case No.: 2:22-cv-00123-JAM-KJN<br><br>**ANSWER TO COUNTERCLAIMS** |

# ANSWER TO COUNTERCLAIMS

Counter-Defendant Pablo Marquez responds to Counter-Claimant William Moynihan's counterclaims as follows:

## I.     Introduction

1.     Marquez has insufficient knowledge to admit or deny the allegations contained in paragraph 1 of Moynihan's counterclaims and therefore denies them.

2.     Marquez has insufficient knowledge to admit or deny the allegations contained in paragraph 2 of Moynihan's counterclaims and therefore denies them.

3.     Marquez has insufficient knowledge to admit or deny the allegations contained in paragraph 3 of Moynihan's counterclaims and therefore denies them.

4.     Marquez admits that Moynihan contacted Marquez in July 2021 on Twitter. The content of those messages speaks for itself. Marquez denies all other allegations in paragraph 4 of Moynihan's counterclaims.

5.     Marquez admits that Moynihan worked on Marquez's *Robotos* NFT project before its launch. Marquez denies all other allegations in paragraph 5 of Moynihan's counterclaims.

6.     Marquez admits that he included Zack Tanner in Marquez's *Robotos* NFT project. Marquez further admits that he told Moynihan that he "would be down to split everything three ways" before contacting Tanner about the project, determining how Moynihan or Tanner would provide services in connection with Marquez's *Robotos* NFT project, or what funds they would receive from his project's mint. Marquez denies all other allegations in paragraph 6 of Moynihan's counterclaims.

7.     Marquez admits that his *Robotos* NFT project has been successful and that with that success his project has sustained revenues and that certain nonfungible tokens associated with the project have sold for significant sums in secondary sales, including a sale calculated at approximately $100,000. Marquez denies all other allegations in paragraph 7 of Moynihan's counterclaims.

8. Because the counterclaims do not identify what "the *Robotos*" are, Marquez has insufficient knowledge to admit or deny the allegation that he "is claiming sole ownership of … the *Robotos*." Marquez denies all other allegations in paragraph 8 of Moynihan's counterclaims.

9. Paragraph 9 of Moynihan's counterclaims consists of conclusions of law and no response is required. To the extent a response is required, Marquez denies all allegations in paragraph 9.

## II. The Parties

10. Marquez has insufficient knowledge to admit or deny the allegations contained in paragraph 10 of Moynihan's counterclaims and therefore denies them.

11. Marquez admits that he resides in Mexico City, Mexico. Marquez denies all other allegations in paragraph 11 of Moynihan's counterclaims.

## III. Jurisdiction and Venue

12. Paragraph 12 of Moynihan's counterclaims consists of conclusions of law and no response is required. To the extent a response is required, Marquez admits that he resides in Mexico City, Mexico and that Moynihan seeks to satisfy the jurisdictional requirements of this Court for diversity jurisdiction. Marquez denies all other allegations in paragraph 12.

13. Paragraph 13 of Moynihan's counterclaims consists of conclusions of law and no response is required. To the extent a response is required, Marquez admits that Moynihan seeks to satisfy the jurisdictional requirements of this Court for supplemental jurisdiction. Marquez denies all other allegations in paragraph 13.

14. Paragraph 14 of Moynihan's counterclaims consists of conclusions of law and no response is required. To the extent a response is required, Marquez admits that venue is proper in this District.

///

///

3

ANSWER TO COUNTERCLAIMS

## IV. General Allegations

15. Marquez has insufficient knowledge to admit or deny the allegations contained in paragraph 15 of Moynihan's counterclaims and therefore denies them.

16. Marquez has insufficient knowledge to admit or deny the allegations contained in paragraph 16 of Moynihan's counterclaims and therefore denies them.

17. Marquez has insufficient knowledge to admit or deny the allegations contained in the first sentence in paragraph 17 of Moynihan's counterclaims and therefore denies them. Marquez admits that profile picture or PFP NFTs *may* sometimes focus on a character's upper body or head to the extent such PFP NFT contains a design featuring an anthropomorphic figure. Marquez denies all other allegations in paragraph 17 of Moynihan's counterclaims.

18. Marquez denies the allegations in paragraph 18 of Moynihan's counterclaims. For example, the Quetzalboto, Boomboto, and Robodad *Robotos* depicted in the image associated with paragraph 18 are one of one or 1/1, meaning they are not generative and were created *solely* by hand by Marquez without the use of a script.

19. Marquez has insufficient knowledge to admit or deny the allegations contained in the first sentence in paragraph 19 of Moynihan's counterclaims and therefore denies them.

20. Marquez admits that he created *Bottts*, which were used in the *Meta Bots* NFTs. Marquez denies all other allegations in paragraph 20 of Moynihan's counterclaims.

21. Marquez admits that Moynihan contacted him through Twitter in connection with the *Meta Bots* NFTs, with which Marquez informed Moynihan he was not involved. The content of those conversations speaks for itself. Marquez denies all other allegations in paragraph 21 of Moynihan's counterclaims.

22. Marquez admits that Moynihan told Marquez via a Twitter direct message "you should launch your own project." In that conversation, Marquez told Moynihan that

4

he had already started his own NFT project. The content of that conversation otherwise speaks for itself. Marquez denies all other allegations in paragraph 22 of Moynihan's counterclaims.

23. Marquez admits that he sent Moynihan the image associated with paragraph 23 of Moynihan's counterclaims depicting the *Techies*, which includes robot-like characters. Marquez denies all other allegations in paragraph 23 of Moynihan's counterclaims.

24. Marquez can neither admit nor deny the allegations contained in the first line in paragraph 24 of Moynihan's counterclaims because those allegations are obscured by an image, and therefore he denies them. As for the remainder, Marquez admits that he and Moynihan spoke on the phone concerning Marquez's NFT project. Marquez denies all other allegations in paragraph 24 of Moynihan's counterclaims.

25. Marquez admits that he texted with Moynihan on July 10, 2021 about Marquez's NFT project, inviting Moynihan to help him create what would become the *Robotos* NFT project. The content of those text messages speaks for itself. Marquez denies all other allegations in paragraph 25 of Moynihan's counterclaims.

26. Marquez denies all allegations in paragraph 26 of Moynihan's counterclaims.

27. Marquez admits that he messaged Moynihan about bringing Zack Tanner into Marquez's NFT project. The content of those messages speaks for itself. Marquez further admits that he and Tanner co-founded Blush. Marquez denies all other allegations in paragraph 27 of Moynihan's counterclaims.

28. Marquez admits that he told Moynihan that he "would be down to split everything three ways" between himself, Tanner, and Moynihan. The content of the message otherwise speaks for itself. Marquez denies all other allegations in paragraph 28 of Moynihan's counterclaims.

29. Marquez denies the allegations in paragraph 29 of Moynihan's counterclaims.

30. Marquez denies the allegations in paragraph 30 of Moynihan's counterclaims.

31. Marquez admits that had circulated notes and task lists to Moynihan and Tanner after a call with them. Marquez denies all other allegations in paragraph 31 of Moynihan's counterclaims.

32. Marquez admits that he tasked Moynihan with building the smart contract for the *Robotos* NFT project. Marquez denies all other allegations in paragraph 32 of Moynihan's counterclaims.

33. Marquez admits that a smart contract consists of lines of code, oftentimes open-source code, and the purpose of a smart contract is to generally track NFT transactions. Marquez denies all other allegations in paragraph 33 of Moynihan's counterclaims.

34. Marquez denies the allegations in paragraph 34 of Moynihan's counterclaims.

35. Marquez denies the allegations in paragraph 35 of Moynihan's counterclaims.

36. Marquez admits the allegations in paragraph 36 of Moynihan's counterclaims.

37. Marquez admits that before the launch of the *Robotos* NFT project, Moynihan, Marquez, and Tanner each connected their respective wallets to the contract to receive their respective primary sales associated with the initial mint proceeds. Marquez admits that Moynihan, Marquez, and Tanner each had to sign before the disbursement of initial mint proceeds. Marquez denies all other allegations in paragraph 37 of Moynihan's counterclaims.

38. Marquez denies the allegations in paragraph 38 of Moynihan's counterclaims.

39. Marquez denies the allegations in paragraph 39 of Moynihan's counterclaims.

40. Marquez admits that he instructed Moynihan to set up the *Robotos* OpenSea account and set royalties at 4%, meaning that the project would derive that portion of all post-mint sales made on OpenSea. Marquez denies all other allegations in paragraph 40 of Moynihan's counterclaims.

41. Marquez admits that he told Moynihan to add Tanner, Moynihan, and Marquez to the OpenSea account for the project. Marquez denies all other allegations in paragraph 41 of Moynihan's counterclaims.

42. Marquez admits that Moynihan was responsible for other project-related activities assigned to him by Marquez, including working on the *Robotos* website and Discord channel. Marquez denies all other allegations in paragraph 42 of Moynihan's counterclaims.

43. Marquez admits that he tasked Tanner with working on deploying an algorithm to combine elements of Marquez's artwork into images and GIFs. Marquez has insufficient knowledge to admit or deny what experience Moynihan had from his purported NFT collection with writing scripts. Marquez denies all other allegations in paragraph 43 of Moynihan's counterclaims.

44. Marquez denies the allegations in paragraph 44 of Moynihan's counterclaims that he had only some "core" responsibilities. Marquez created and solely managed the *Robotos* NFT project. He delegated tasks to Tanner and Moynihan and took on the sole role of creating the artwork, which Moynihan had no contribution to or control over. Marquez also promoted and marketed the project and was the sole name associated with the artwork and project in social media and marketing efforts. The entire project fell within Marquez's "core" responsibilities, even though some tasks were delegated to Tanner and Moynihan.

45. Marquez denies the allegations in paragraph 45 of Moynihan's counterclaims.

46. Marquez denies the allegations in paragraph 46 of Moynihan's counterclaims that Moynihan paid for project expenses without reimbursement.

Marquez paid Moynihan to cover the out-of-pocket costs associated with the tasks assigned to him.

47. Marquez admits that his project launched a presale of 900 *Robotos* tokens on or about August 2, 2021, the day before the full sale. Marquez denies all other allegations in paragraph 47 of Moynihan's counterclaims.

48. Marquez admits that Moynihan told him about a bug in the smart contract on or about August 3, 2021, referring to it as a "small issue." Marquez denies all other allegations in paragraph 48 of Moynihan's counterclaims.

49. Marquez denies the allegations in paragraph 49 of Moynihan's counterclaims.

50. Marquez admits that he, Tanner, and Moynihan discussed the last token bug on or about August 3, 2021. Marquez denies all other allegations in paragraph 50 of Moynihan's counterclaims.

51. The allegation that "it became instantly clear *Robotos* was an enormous success" is a subjective matter of opinion, and on that basis Marquez denies it. As for the remainder, Marquez has insufficient knowledge to admit or deny how many sales were made per minute and therefore denies those allegations.

52. Marquez admits that the *Robotos* website was not operating properly due to Moynihan's failure to use proper protocols. Marquez denies all other allegations in paragraph 52 of Moynihan's counterclaims.

53. Marquez admits that he and Tanner discussed options in the #dev Discord chat to find a solution to Moynihan's last token bug. Marquez denies all other allegations in paragraph 53 of Moynihan's counterclaims.

54. Marquez denies the allegations in paragraph 54 of Moynihan's counterclaims.

55. Marquez denies the allegations in paragraph 55 of Moynihan's counterclaims.

56. Marquez admits that the project wallet minted the last *Robotos* token. Marquez denies all other allegations in paragraph 56 of Moynihan's counterclaims.

57. Marquez admits that Moynihan's personal wallet was removed from OpenSea as the mint proceeds were actualized thus ending Moynihan's entitlement to share in the proceeds of Marquez's project. Marquez has insufficient knowledge to admit or deny what Moynihan "discovered" and therefore denies those allegations. Marquez denies all other allegations in paragraph 57 of Moynihan's counterclaims.

58. Marquez admits that he initiated a call with Moynihan to inform him that his involvement in Marquez's project had completed now that the tokens were minted. During that call Moynihan asked if there were other reasons for his termination other than completion of the minting, and Marquez explained that Moynihan had a poor attitude, failed to accept his mistakes, was absent for several days before the launch, and failed to communicate the status of his tasks to Marquez. Marquez denies all other allegations in paragraph 58 of Moynihan's counterclaims.

59. Marquez admits that he contacted OpenSea concerning the *Robotos* account on or about August 4, 2021 and learned that there was a bug with the platform. Marquez denies all other allegations in paragraph 59 of Moynihan's counterclaims.

60. Marquez denies all allegations in paragraph 60 of Moynihan's counterclaims.

61. Marquez admits that he removed Moynihan's wallet from the OpenSea *Robotos* account. Marquez denies all other allegations in paragraph 61 of Moynihan's counterclaims.

62. Marquez denies all allegations in paragraph 62 of Moynihan's counterclaims.

63. Marquez denies all allegations in paragraph 63 of Moynihan's counterclaims.

64. Marquez admits that once the *Robotos* tokens were minted and sold there was nothing for Moynihan to do on the project anymore, as their agreement had been

9

fulfilled. Marquez denies all other allegations in paragraph 64 of Moynihan's counterclaims.

65. Marquez denies all allegations in paragraph 65 of Moynihan's counterclaims.

66. Marquez denies all allegations in paragraph 66 of Moynihan's counterclaims.

67. Marquez denies all allegations in paragraph 67 of Moynihan's counterclaims.

68. Marquez has insufficient knowledge to admit or deny what Moynihan "discovered" and therefore denies those allegations. Marquez admits that he listed *Robotos* on Nifty Gateway and that only Marquez received or receives royalties from Nifty Gateway sales, as the owner of *Robotos*. Marquez denies all other allegations in paragraph 68 of Moynihan's counterclaims.

69. Marquez admits that *Robotos* tokens were sold on Nifty Gateway. Marquez denies all other allegations in paragraph 69 of Moynihan's counterclaims.

70. Marquez admits that he informed Moynihan that his discretionary revenues would be decreased as he was no longer associated with Marquez's project. Otherwise, the content of that message speaks for itself. Marquez further admits that he removed the project's initial wallet on OpenSea. Marquez denies all other allegations in paragraph 70 of Moynihan's counterclaims.

71. Marquez admits that Tanner wrote to Moynihan on Discord on or about November 27, 2021, informing him that Marquez would pay him one-third of certain OpenSea royalties. The content of those messages otherwise speaks for itself. Marquez denies all other allegations in paragraph 71 of Moynihan's counterclaims.

72. Marquez admits that after he paid Moynihan on or about November 27, 2021, he stopped responding to Moynihan. Marquez also admits that his counsel sent Moynihan a cease-and-desist letter. The content of that letter speaks for itself. Marquez denies all other allegations in paragraph 72 of Moynihan's counterclaims.

**First Claim for Relief**

73. No response is required to paragraph 73 of Moynihan's counterclaims.

74. Marquez denies all allegations in paragraph 74 of Moynihan's counterclaims.

75. Marquez denies all allegations in paragraph 75 of Moynihan's counterclaims.

76. Marquez denies all allegations in paragraph 76 of Moynihan's counterclaims.

77. Marquez denies all allegations in paragraph 77 of Moynihan's counterclaims.

78. Marquez denies all allegations in paragraph 78 of Moynihan's counterclaims.

**Second Claim for Relief**

79. No response is required to paragraph 79 of Moynihan's counterclaims.

80. Marquez denies all allegations in paragraph 80 of Moynihan's counterclaims.

81. Marquez denies all allegations in paragraph 81 of Moynihan's counterclaims.

82. Marquez denies all allegations in paragraph 82 of Moynihan's counterclaims.

83. Marquez denies all allegations in paragraph 83 of Moynihan's counterclaims.

84. Marquez denies all allegations in paragraph 84 of Moynihan's counterclaims.

**Third Claim for Relief**

85. No response is required to paragraph 85 of Moynihan's counterclaims.

86. Marquez denies all allegations in paragraph 86 of Moynihan's counterclaims.

87. Marquez denies all allegations in paragraph 87 of Moynihan's counterclaims.

88. Marquez denies all allegations in paragraph 88 of Moynihan's counterclaims.

89. Marquez denies all allegations in paragraph 89 of Moynihan's counterclaims.

**Fourth Claim for Relief**

90. No response is required to paragraph 90 of Moynihan's counterclaims.

91. Marquez denies all allegations in paragraph 91 of Moynihan's counterclaims.

92. Marquez denies all allegations in paragraph 92 of Moynihan's counterclaims.

93. Marquez denies all allegations in paragraph 93 of Moynihan's counterclaims.

94. Marquez denies all allegations in paragraph 94 of Moynihan's counterclaims.

95. Marquez denies all allegations in paragraph 95 of Moynihan's counterclaims.

96. Marquez denies all allegations in paragraph 96 of Moynihan's counterclaims.

**Fifth Claim for Relief**

97. No response is required to paragraph 97 of Moynihan's counterclaims.

98. Marquez denies all allegations in paragraph 98 of Moynihan's counterclaims.

99. Marquez denies all allegations in paragraph 99 of Moynihan's counterclaims.

100. Marquez denies all allegations in paragraph 100 of Moynihan's counterclaims.

101. Marquez denies all allegations in paragraph 101 of Moynihan's counterclaims.

### Sixth Claim for Relief

102. No response is required to paragraph 102 of Moynihan's counterclaims.

103. Marquez denies all allegations in paragraph 103 of Moynihan's counterclaims.

104. Marquez denies all allegations in paragraph 104 of Moynihan's counterclaims.

105. Marquez denies all allegations in paragraph 105 of Moynihan's counterclaims.

106. Marquez denies all allegations in paragraph 106 of Moynihan's counterclaims.

107. Marquez denies all allegations in paragraph 107 of Moynihan's counterclaims.

### PRAYER FOR RELIEF

Marquez denies that Moynihan is entitled to the relief requested in his counterclaims.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Marquez demands trial by jury on Moynihan's counterclaims on any issue so triable of right by a jury.

### AFFIRMATIVE DEFENSES

#### First Affirmative Defense

Each and every cause of action and claim set forth in Moynihan's counterclaims fails to state a claim upon which relief can be granted. Specifically, Moynihan's claims are barred as no oral, written, or implied contract, partnership, and/or joint venture existed between Moynihan and Marquez.

#### Second Affirmative Defense

Moynihan's claims are barred by the statutory and common law statute of frauds

to the extent they are premised on alleged oral promises to pay royalties or revenues associated with Marquez's *Robotos* project and any other projects outside the time frame permitted by statutory or common law without a writing.

### Third Affirmative Defense

Any recovery on Moynihan's counterclaims, or any purported cause of action alleged therein, is barred on the grounds that, if the contract, partnership, and/or joint venture alleged by Moynihan did exist, which Marquez disputes, they were terminated on or about August 4, 2021, when Moynihan agreed to leave the project.

### Fourth Affirmative Defense

Any recovery on Moynihan's counterclaims, or any purported cause of action alleged therein, is barred on the grounds that, if the contract, partnership, and/or joint venture alleged by Moynihan did exist, which Marquez disputes, they were modified on or about August 4, 2021, when Moynihan agreed to leave the project.

### Fifth Affirmative Defense

Any recovery on Moynihan's counterclaims, or any purported cause of action alleged therein, is barred in that the terms of any alleged contract, partnership, and/or joint venture between Marquez and Moynihan, which Marquez disputes, was materially breached and repudiated by Moynihan, and he is therefore not entitled to relief upon such alleged contract or agreement.

### Sixth Affirmative Defense

Any recovery on Moynihan's counterclaims, or any purported cause of action alleged therein, is barred because the alleged contract, partnership, and/or joint venture are too vague and ambiguous to be enforceable. Specifically, among other things, the purported contract of "I would be down to split everything three ways" is ambiguous and vague and reflects subjunctive mood.

### Seventh Affirmative Defense

Moynihan is barred from recovery against Marquez for breach of written, oral, and/or implied contract, partnership, and/or joint venture because the parties never had

14

a meeting of the minds.

### Eighth Affirmative Defense

Any recovery on Moynihan's counterclaims, or any purported cause of action alleged therein, is barred on the grounds that if the contract, partnership, and/or joint venture alleged by Moynihan did exist, which Marquez disputes, they were void.

### Ninth Affirmative Defense

Any recovery on Moynihan's counterclaims, or any purported cause of action alleged therein, is barred on the grounds that if the contract, partnership, and/or joint venture alleged by Moynihan did exist, which Marquez disputes, they were voidable.

### Tenth Affirmative Defense

Any recovery on Moynihan's counterclaims, or any purported cause of action alleged therein, for oral or implied contract, partnership, and/or joint venture is barred on the grounds that no such relationship was executed.

### Eleventh Affirmative Defense

Moynihan's counterclaims, or any purported cause of action alleged therein, is barred by the doctrine of unclean hands.

### Twelfth Affirmative Defense

Moynihan's counterclaims, or any purported cause of action alleged therein, is barred by the doctrine of estoppel due to Moynihan's own acts or omissions.

### Thirteenth Affirmative Defense

Moynihan's counterclaims, or any purported cause of action alleged therein, is barred by the doctrine of waiver and consent.

### Fourteenth Affirmative Defense

Moynihan's counterclaims, or any purported cause of action alleged therein, is barred by the doctrine of laches.

### Fifteenth Affirmative Defense

Moynihan has not sustained any losses, damages, or detriment of any sum or amount whatsoever as a result of any acts, fault, carelessness, recklessness, or other

alleged breach of duty on the party of Marquez.

### Sixteenth Affirmative Defense

Moynihan's counterclaims, or any other causes of action alleged therein, are barred, in whole or in part, because Marquez was justified in doing any and/or all of the acts alleged in Moynihan's counterclaims.

### Seventeenth Affirmative Defense

As for Moynihan's claims premised on an alleged oral partnership or joint venture between the parties, which Marquez denies, such claims are barred, in whole or in part, because Moynihan abandoned or repudiated the alleged agreement at issue and therefore released Marquez from all duties under the alleged agreement.

### Eighteenth Affirmative Defense

Moynihan's counterclaims, or any other causes of action alleged therein, are barred, in whole or in part, because Moynihan would be unjustly enriched if he was allowed to recover any part of the damages alleged in his counterclaims.

### Nineteenth Affirmative Defense

Moynihan's request for punitive or other enhanced damages is barred because Marquez at no time acted with oppression, fraud, or malice towards Moynihan and because Moynihan has failed to raise sufficient allegations to comply with California Civil Code section 3294.

### Twentieth Affirmative Defense

At all relevant times, Marquez acted in good faith and Moynihan had or should have had knowledge of all the true facts and circumstances, including without limitation because the parties made clear that Moynihan was only entitled to a third of the proceeds from the initial mint of Marquez's *Robotos* NFT project.

### Twenty-First Affirmative Defense

Moynihan's counterclaims, and each alleged cause of action therein, fails to state a claim for attorney's fees, despite seeking the same in his prayer for relief.

**Twenty-Second Affirmative Defense**

Moynihan's counterclaims, and each alleged cause of action therein, are barred by the doctrine of accord and satisfaction.

**Twenty-Third Affirmative Defense**

Any recovery by Moynihan on his counterclaims is barred because any and all alleged injuries or damages to him, the existence of which is specifically denied, were not proximately caused or contributed to by Marquez. The conduct of Moynihan in failing to cooperate with Marquez to launch Marquez's project and for failing to build a bug-free smart contract is the cause of any alleged damages in his counterclaims.

**Twenty-Fourth Affirmative Defense**

On information and belief, Moynihan has failed to act reasonably to mitigate his damages asserted in his counterclaims.

**Twenty-Fifth Affirmative Defense**

If Moynihan prevails in his counterclaims, Marquez is entitled to setoff for any monies received by Moynihan from Marquez for services provided or sums owed associated with Marquez's project or otherwise.

**Twenty-Sixth Affirmative Defense**

Any recovery on Moynihan's counterclaims, or any purported cause of action alleged therein, is barred on the grounds that, no alleged contract, partnership, and/or joint venture alleged by Moynihan was created because it was induced by fraud. Specifically, Moynihan's contribution to the alleged partnership and/or joint venture was his services in preparing the smart contract and tasks related to minting the *Robotos* NFTs. Moynihan represented that he had expertise in performing such services, which representations he knew were not true and were made in an attempt to persuade Marquez to agree to the contract, partnership, and/or joint venture alleged by Moynihan. Marquez reasonably relied on Moynihan's representations and would have never agreed to work with him had he known that these representations were not true.

| | | |
|---|---|---|
| 1 | Dated: March 4, 2022 | Respectfully submitted, |

*/s/ Ethan Jacobs*
Ethan Jacobs (SBN 291838)
ethan@ejacobslaw.com
ETHAN JACOBS LAW
100 Pine Street, Suite 1250
San Francisco, California 94111
Tel.: (415) 275-0845

-and-

James Slater (admitted *pro hac vice*)
james@slater.legal
SLATER LEGAL PLLC
333 Southeast Second Avenue
Suite 2000
Miami, Florida 33131
Tel.: (305) 523-9023

*Attorneys for Plaintiff/Counter-Defendant Pablo Marquez*

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2022, I electronically filed the foregoing document with the Clerk by using the CM/ECF system, which will serve a copy on all counsel of record.

By: */s/ Ethan Jacobs*
Ethan Jacobs